FILED
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.
JUL 27 2011
DEPUTY CLERK

UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) NO. | 3:09-00262 |
| v. | ) | |
| | ) | CHIEF JUDGE CAMPBELL |
| [1] TERRY KRETZ | ) | |
| (Counts One through Sixteen) | ) | 15 U.S.C. § 78j(b) |
| | ) | 15 U.S.C. § 78ff |
| [2] ROBERT HALEY | ) | 17 C.F.R. § 240.10b-5 |
| (Counts One through Fifteen) | ) | 18 U.S.C. § 2 |
| | ) | 18 U.S.C. § 1014 |
| [3] DARYL BORNSTEIN | ) | 18 U.S.C. § 1341 |
| (Counts One, Two, and Ten) | ) | 18 U.S.C. § 1343 |
| | ) | 18 U.S.C. § 1956(a)(1)(A)(i) |
| | ) | 18 U.S.C. § 1957 |

# SUPERSEDING INDICTMENT

## COUNT ONE

THE GRAND JURY CHARGES:

At times material to this Indictment:

### I. Background

1. Hanover Corporation, LLC ("Hanover") was a limited liability company that was formed in 2002 and maintained a place of business in Nashville, Tennessee. Hanover purported to be an investment firm that invested in stock options, real estate, equity shares of companies, and other securities.

2. [1] TERRY KRETZ was the Chief Executive Officer of Hanover and was responsible for the day-to-day operations and management of Hanover.

3. **[2] ROBERT HALEY** was the Chief Financial Officer of Hanover and was responsible for overseeing the finances and bookkeeping of Hanover.

4. **[3] DARYL BORNSTEIN** was a salesman for Hanover.

## II. The Conspiracy

5. From in or about January 2004 through in or about August 2006, in the Middle District of Tennessee and elsewhere, **[1] TERRY KRETZ, [2] ROBERT HALEY**, and **[3] DARYL BORNSTEIN** did willfully, knowingly, and unlawfully combine, conspire, confederate, and agree with each other and others, known and unknown to the Grand Jury, to commit one or more offenses against the United States, including (a) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10(b)-5; (b) wire fraud, in violation of Title 18, United States Code, Section 1343; and (c) mail fraud, in violation of Title 18, United States Code, Section 1341.

## III. Manner and Means

6. The manner and means by which, [1] TERRY KRETZ, [2] ROBERT HALEY, and [3] DARYL BORNSTEIN sought to accomplish and carry out the conspiracy and the underlying scheme to defraud included, among others, the following:

   a. From in or about October 2004 through in or about August 2006, [1] TERRY KRETZ, [2] ROBERT HALEY, [3] DARYL BORNSTEIN and others conspired, and perpetrated a scheme, to defraud clients of Hanover by soliciting and obtaining from them millions of dollars under false pretenses, failing to invest those client funds as promised, and misappropriating and converting client funds to [1] TERRY KRETZ's, [2] ROBERT HALEY's, [3] DARYL BORNSTEIN's, and others' benefit without the knowledge or authorization of the clients. Contrary to their promises and representations to clients, [1] TERRY KRETZ,

2

[2] ROBERT HALEY, [3] DARYL BORNSTEIN and others, in fact, operated a Ponzi scheme in which existing clients were paid "interest" (and, in some cases, their principal) from later clients' investments.

      b.      Throughout Hanover's existence, [1] TERRY KRETZ and others acting on his behalf told clients that Hanover operated a "trading room" that engaged in, among other types of investments, options trading. Depending on the time, clients were offered one of two ways to invest with Hanover to take advantage of the trading room and other investment strategies.

      c.      From Hanover's formation in 2002 through approximately the end of 2003, [1] TERRY KRETZ and others acting on his behalf offered clients the ability to invest with Hanover by having them open their own trading account at Man Securities, Inc., an independent brokerage firm. [1] TERRY KRETZ, [2] ROBERT HALEY, and others acting on their behalf then would, and did, have those clients execute third-party trade authorizations, which allowed Hanover employees to access and make trades on the clients' accounts. Ultimately, the "trading room" investing performed by Hanover during this period was, in general, unsuccessful, and most clients suffered losses.

      d.      In or about late 2003 or early 2004, [1] TERRY KRETZ and others acting on his behalf shifted away from having clients open their own trading accounts. Instead, [1] TERRY KRETZ and others acting on his behalf began offering clients a different way to invest: through an instrument styled as a promissory note. The promissory notes, along with their accompanying promissory-note agreements, set out the terms of the investment. Those terms provided that clients would invest a principal sum (referred to in the note as a "loan"),

3

which [1] TERRY KRETZ and other Hanover employees could invest in several enumerated ways. The promissory notes and promissory-note agreements further provided that, in return, the client would receive a fixed rate of return (referred to in the note as "interest") every month, plus a final payment of principal and accrued unpaid interest upon the promissory note's maturity date.

      e.    The promissory notes, options, and other investments described in Paragraph 6(b) through 6(d) constituted securities within the meaning of federal securities laws.

      f.    In or about October 2004, [3] DARYL BORNSTEIN became employed by Hanover and thereafter was the company's main salesman. In that role, [3] DARYL BORNSTEIN solicited the majority of Hanover clients, many of whom were his former clients from past investment opportunities that he had offered in other capacities.

      g.    [1] TERRY KRETZ, [2] ROBERT HALEY, and [3] DARYL BORNSTEIN, directly and indirectly, solicited and induced prospective clients to invest money, solicited and induced current clients to reinvest, and lulled current clients through multiple false or misleading representations. Clients invested money based upon, among other things, [1] TERRY KRETZ's and [3] DARYL BORNSTEIN's promises to invest their funds in stock options, real estate, equity shares in companies, and other securities. Clients also invested money based upon [1] TERRY KRETZ's and [3] DARYL BORNSTEIN's representations that they would achieve a guaranteed fixed rate of return (in the form of the so-called "interest") and that their principal investment (the so-called "loan") was guaranteed. In truth and in fact, and as [1] TERRY KRETZ, [2] ROBERT HALEY, and [3] DARYL BORNSTEIN well knew, these promises and representations were false.

4

h.  In addition to those false promises and representations, [3] DARYL BORNSTEIN also made specific misrepresentations to many of his former clients to induce them to invest in Hanover. For example, in several cases, [3] DARYL BORNSTEIN represented to a former client that the client could obtain returns on a previous unpaid investment by "rolling over" that old investment over to Hanover. Oftentimes this would involve the client making a new investment in Hanover and then receiving a promissory note that obligated Hanover to pay interest on the total of the previous investment plus the new Hanover investment. In addition, [3] DARYL BORNSTEIN further assured certain clients that they would receive their entire principal (for both the previous and new investments) back. In truth and in fact, and as [3] DARYL BORNSTEIN knew, those representations were false.

i.  [1] TERRY KRETZ and others on his behalf also made and caused others to make, directly and indirectly, material false or misleading representations regarding Hanover's financial condition and holdings. Among other examples, [1] TERRY KRETZ and others on his behalf falsely represented that Hanover had a net worth of over $100 million, that Hanover held certain accounts at well-known investment banks such as Goldman Sachs and Credit Suisse First Boston, and that Hanover's in-house trading room was making significant investment gains. In truth and in fact, and as [1] TERRY KRETZ and the others well knew, those representations were false.

j.  In addition, [1] TERRY KRETZ, [2] ROBERT HALEY, and [3] DARYL BORNSTEIN made and caused others to make, directly and indirectly, material false or misleading representations regarding the financial condition and status of several of the start-up companies in which Hanover was investing. Among other examples, [1] TERRY KRETZ,

5

[2] ROBERT HALEY, and [3] DARYL BORNSTEIN grossly exaggerated those companies' operational and financial status and falsely represented that several of the companies had already signed major contracts for their products. In truth and in fact, and as [1] TERRY KRETZ, [2] ROBERT HALEY, and [3] DARYL BORNSTEIN knew, those representations were false.

k. [1] TERRY KRETZ, [2] ROBERT HALEY, [3] DARYL BORNSTEIN, and others acting on their behalf, also falsely and materially failed to inform clients that the funds they invested would be used, in whole or in part, to pay interest or principal to earlier clients. Similarly, [1] TERRY KRETZ, [2] ROBERT HALEY, [3] DARYL BORNSTEIN, and others acting on their behalf falsely and materially failed to inform clients that the investment returns (the so-called "interest") they would and did receive came from funds invested by later clients, not from the success of options trading, the start-up companies, or any other investment.

l. Contrary to their promises to clients about how client funds would be invested—as represented orally, in promissory notes, and in promissory-note agreements—[1] TERRY KRETZ, [2] ROBERT HALEY, and [3] DARYL BORNSTEIN in fact, used most of the client funds to make periodic "interest" payments or to pay back the principal on other clients' investments. By mailing and causing to be mailed checks purporting to be "interest" payments but which were in fact, as [1] TERRY KRETZ, [2] ROBERT HALEY, and [3] DARYL BORNSTEIN well knew, actually funds received from new investors, [1] TERRY KRETZ, [2] ROBERT HALEY, and [3] DARYL BORNSTEIN furthered their clients' misconceptions in this regard, caused clients to invest even more money, and lulled clients from demanding their money back. In addition, and contrary to their promises, [1] TERRY KRETZ, [2] ROBERT HALEY, and [3] DARYL BORNSTEIN took other client funds for their or others' use and

6

benefit, including for their salaries, financing [1] TERRY KRETZ's and [3] DARYL BORNSTEIN's personal real-estate purchases, making donations to [1] TERRY KRETZ's church, and other purposes.

  m. [1] TERRY KRETZ, [2] ROBERT HALEY, [3] DARYL BORNSTEIN, and others acting on their behalf accepted and used millions of dollars of client money, some of which was obtained through wire transfers in and affecting interstate commerce from financial institutions, both inside and outside of the state of Tennessee, and some of which was obtained through mailings delivered by the United States Postal Service or private commercial carriers. In addition, [1] TERRY KRETZ, [2] ROBERT HALEY, [3] DARYL BORNSTEIN, and others acting on their behalf (i) conducted and caused to be conducted wire transfers of client funds between accounts at financial institutions that operated in interstate commerce and (ii) mailed and caused to be mailed purported "interest" payments through the United States Postal Service or private commercial carriers.

       IV. Overt Acts

7. In furtherance of the above conspiracy and to effect the objects and purposes thereof, [1] TERRY KRETZ, [2] ROBERT HALEY, and [3] DARYL BORNSTEIN, individually or jointly, committed one or more overt acts within the Middle District of Tennessee and elsewhere, including, among others, the following:

  a. Between on or about March 25, 2005 and on or about March 29, 2005, [1] TERRY KRETZ and [2] ROBERT HALEY, individually or jointly, caused a mailing from W.H. and L.H., which enclosed check #324, in the amount of $500,000, payable to Hanover.

  b. Between on or about May 2, 2005 and on or about May 10, 2005,

7

[1] TERRY KRETZ and [2] ROBERT HALEY, individually or jointly, mailed and caused to be mailed check #11917 from Hanover to B.K..

    c.    Between on or about October 1, 2005 and on or about October 6, 2005, [1] TERRY KRETZ and [2] ROBERT HALEY, individually or jointly, mailed and caused to be mailed check #13179 from Hanover to M.B.

    d.    Between on or about February 2, 2006 and on or about February 8, 2006, [1] TERRY KRETZ and [2] ROBERT HALEY, individually or jointly, mailed and caused to be mailed check #14380 from Hanover to G.M.

    e.    Between in or about January 2004 to in or about August 2006, [1] TERRY KRETZ and [2] ROBERT HALEY, individually or jointly, prepared and caused to be prepared checks purporting to be interest payments, including but not limited to checks #11917, #13179, and #14380 referred to in Paragraphs 7(b) – 6(d) above.

    f.    Between in or about January 2004 and in or about August 2006, [1] TERRY KRETZ and [2] ROBERT HALEY, individually or jointly, prepared and caused to be prepared IRS Forms 1099-INT falsely purporting to reflect interest income.

    g.    Between in or about January 2004 and in or about August 2006, [1] TERRY KRETZ and [2] ROBERT HALEY, individually or jointly, mailed and caused to be mailed IRS Forms 1099-INT to clients of Hanover.

    h.    On or about October 12, 2005, [1] TERRY KRETZ and [2] ROBERT HALEY, individually or jointly, caused a wire transfer of $350,000 from the bank account of R.M. to the bank account of Hanover.

    i.    Between on or about January 2004 and in or about August 2006,

8

[1] TERRY KRETZ and [2] ROBERT HALEY, individually or jointly, prepared and caused to be prepared balance sheets falsely representing the financial condition of Hanover and its investments, including but not limited to a balance sheet dated "as of December 23, 2005."

j.  After the death of R.C.S. on May 4, 2006, [3] DARYL BORNSTEIN, on May 22, 2006, obtained a Regions Bank check, remitted from R.C.S. Revocable Living Trust, for $150,000 payable to Hanover Corporation.

k.  On or about May 22, 2006, [3] DARYL BORNSTEIN received from Hanover Corporation check 15071, in the amount of $100,000, which Bornstein later used for a down payment on a home.

l.  On or about May 25, 2006, [3] DARYL BORNSTEIN obtained two Regions Bank checks, remitted from R.C.S. Revocable Living Trust, in the amounts of $80,000 and $20,000, payable to Hanover Corporation.

m.  On or about June 16, 2006, [3] DARYL BORNSTEIN, while purportedly acting as the executor of the Estate of R.C.S., issued a check from the estate's bank account in the amount of $100,000 payable to Hanover Corporation.

n.  On or about August 10, 2006, [1] TERRY KRETZ and [2] ROBERT HALEY, individually or jointly, represented to Hanover clients that the information in the balance sheet dated "as of December 23, 2005" was accurate.

o.  On or about August 22, 2006, [1] TERRY KRETZ, [2] ROBERT HALEY, and [3] DARYL BORNSTEIN, individually or jointly, caused Hanover Corporation check 15362, in the amount of $15,000, payable to R.C.S., to be issued.

All in violation of Title 18, United States Code, Section 371.

9

Case 3:09-cr-00262   Document 49   Filed 07/27/11   Page 9 of 19 PageID #: 148

## COUNT TWO

THE GRAND JURY FURTHER CHARGES:

1. Paragraphs 1 through 4 and 6 through 7 of Count One are hereby incorporated and realleged as if fully set forth herein.

2. From in or about January 2004 through in or about August 2006, in the Middle District of Tennessee and elsewhere, **[1] TERRY KRETZ, [2] ROBERT HALEY,** and **[3] DARYL BORNSTEIN** unlawfully, willfully, and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in transactions, acts, practices, and courses of business that operated and would operate as a fraud and deceit upon persons, all as set forth in Paragraphs 1 through 4 and 6 through 7 of Count One.

In violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.

10

## COUNT THREE

THE GRAND JURY FURTHER CHARGES:

1. Paragraphs 1 through 4 and 6 through 7 of Count One are hereby incorporated and realleged as if fully set forth herein.

2. From in or about January 2004 through in or about August 2006, in the Middle District of Tennessee and elsewhere, **[1] TERRY KRETZ** and **[2] ROBERT HALEY** devised and intended to devise a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses and representations, and by acts of concealment of the scheme, all as described in Paragraphs 1 through 4 and 6 through 7 of Count One, and, in furtherance thereof, used the interstate wires.

3. On or about the October 12, 2005, in the Middle District of Tennessee and elsewhere, **[1] TERRY KRETZ** and **[2] ROBERT HALEY**, for the purpose of executing the aforesaid scheme, and attempting to do so, knowingly did cause to be transmitted by means of wire communication in interstate commerce, writings, signs, and pictures, namely, a wire transfer of $350,000 from the bank account of R.M. in the state of Florida to the bank account of Hanover in the state of Tennessee.

In violation of Title 18, United States Code, Sections 1343 and 2(a).

11

## COUNTS FOUR THROUGH SEVEN

THE GRAND JURY FURTHER CHARGES:

1. Paragraphs 1 through 4 and 6 through 7 of Count One are hereby incorporated and realleged as if fully set forth herein.

2. From in or about January 2004 through in or about August 2006, in the Middle District of Tennessee and elsewhere, **[1] TERRY KRETZ** and **[2] ROBERT HALEY** devised and intended to devise a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by acts of concealment of the scheme, all as described in Paragraphs 1 through 4 and 6 through 7 of Count One, and in furtherance thereof used the United States mails and private commercial carriers.

3. On or about the dates indicated below for each count, in the Middle District of Tennessee and elsewhere, **[1] TERRY KRETZ** and **[2] ROBERT HALEY**, for the purpose of executing the aforesaid scheme and attempting to do so, knowingly did cause to be delivered by the Postal Service and private interstate carrier according to the direction thereon the following:

| Count | Date of mailing | Description of mailing |
|---|---|---|
| 4 | Between 3/25/05 and 3/29/05 | A mailing from W.H. and L.H. enclosing a check #324, in the amount of $500,000, payable to Hanover |
| 5 | Between 5/2/05 and 5/10/05 | A mailing to B.K. enclosing check #11917, which purported to be an interest payment |
| 6 | Between 10/1/05 and 10/6/05 | A mailing to M.B. enclosing check #13179, which purported to be an interest payment |
| 7 | Between 2/2/06 and 2/8/06 | A mailing to G.M. enclosing check #14380, which purported to be an interest payment |

In violation of Title 18, United States Code, Sections 1341 and 2(a).

12

## COUNTS EIGHT AND NINE

THE GRAND JURY FURTHER CHARGES:

1. Paragraphs 1 through 4 and 6 through 7 of Count One are hereby incorporated and realleged as if fully set forth herein.

2. On or about the dates set forth below with respect to each count, in the Middle District of Tennessee and elsewhere, **[1] TERRY KRETZ** and **[2] ROBERT HALEY** did knowingly engage and attempt to engage in the following monetary transactions in criminally derived property of a value greater than $10,000, affecting interstate commerce and by, through, and to a financial institution, namely, the transfer and withdrawal of funds by the means set forth below, such property having been derived from a specified unlawful activity, namely, mail and wire fraud, in violation of Title 18, United States Code, Sections 1341 and 1343; and securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10(b)-5:

| Count | Date | Monetary Transaction |
|---|---|---|
| 8 | 4/15/05 | Transfer of $600,000 from Hanover's Bank of Nashville account #6048757 to Bank of Nashville account #1047965, later used to purchase cashier check #4431009350 in the amount of $565,861.41 |
| 9 | 5/4/05 | Withdrawal of funds to pay Hanover check #11943 (Bank of Nashville), made payable to D.P. and in the amount of $306,000 |

In violation of Title 18, United States Code, Sections 1957 and 2.

13

## COUNT TEN

THE GRAND JURY FURTHER CHARGES:

1. Paragraphs 1 through 4 and 6 through 7 of Count One are hereby incorporated and realleged as if fully set forth herein.

2. On or about the date set forth below, in the Middle District of Tennessee and elsewhere, [1] **TERRY KRETZ**, [2] **ROBERT HALEY**, and [3] **DARYL BORNSTEIN** did knowingly engage and attempt to engage in the following monetary transaction in criminally derived property of a value greater than $10,000, affecting interstate commerce and by, through, and to a financial institution, namely, the transfer and withdrawal of funds by the means set forth below, such property having been derived from a specified unlawful activity, namely, mail and wire fraud, in violation of Title 18, United States Code, Sections 1341 and 1343; and securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10(b)-5:

| Count | Date | Monetary Transaction |
|---|---|---|
| 10 | 8/22/06 | Withdrawal of funds to pay Hanover check #15362 (First State Bank), made payable to R.C.S. and in the amount of $15,000. |

In violation of Title 18, United States Code, Sections 1957 and 2.

14

## COUNTS ELEVEN THROUGH FIFTEEN

THE GRAND JURY FURTHER CHARGES:

1. Paragraphs 1 through 4 and 6 through 7 of Count One are hereby incorporated and realleged as if fully set forth herein.

2. On or about the dates below for each count, in the Middle District of Tennessee and elsewhere, **[1] TERRY KRETZ** and **[2] ROBERT HALEY** did knowingly conduct and attempt to conduct the following financial transactions affecting interstate commerce and involving the use of a financial institution engaged in interstate commerce, which financial transactions involved the proceeds of a specified unlawful activity, namely, mail and wire fraud, in violation of Title 18, United States Code, Sections 1341 and 1343; and securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10(b)-5, with the intent to promote the carrying on of the specified unlawful activity, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity:

| Count | Date | Financial Transaction |
|---|---|---|
| 11 | 1/5/05 | Payment to B.K. by Hanover check #11206 (Bank of Nashville), in the amount of $3,400, which purported to be an interest payment |
| 12 | 7/12/05 | Payment to W.B. by Hanover check #12516 (Bank of Nashville), in the amount of $1,654.50, which purported to be an interest payment |
| 13 | 11/10/05 | Payment to Bilo Trust (W.H.) by Hanover check #13361 (First State Bank), in the amount of $10,000, which purported to be an interest payment |
| 14 | 1/20/06 | Payment to P.R. and L.R. by Hanover check #14102 (First State Bank), in the amount of $7,000, which purported to be an interest payment |

| Count | Date | Financial Transaction |
|---|---|---|
| 15 | 6/2/06 | Payment to Bilo Trust (W.H.) by Hanover check #15105 (First State Bank), in the amount of $10,000, which purported to be an interest payment |

In violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

## COUNT SIXTEEN

THE GRAND JURY FURTHER CHARGES:

1. Paragraphs 1 through 4 and 6 through 7 of Count One are hereby incorporated and realleged as if fully set forth herein.

2. On or about February 27, 2006, in the Middle District of Tennessee, **[1] TERRY KRETZ** knowingly made a material false statement on a loan application for the purpose of influencing the action of Wilson Bank and Trust, an institution whose accounts were insured by the Federal Deposit Insurance Corporation, namely, **[1] TERRY KRETZ** falsely represented, on a personal financial statement completed as part of a loan application, his financial condition by claiming that, among other things, his total assets exceeded $67 million and his total annual income was $2.6 million.

In violation of Title 18, United States Code, Sections 1014 and 2.

## FORFEITURE ALLEGATION

1. Paragraphs 1 through 4 and 6 through 7 of Count One are hereby incorporated and realleged as if fully set forth herein.

2. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), upon conviction of any offense alleged in Count One (conspiracy, in violation of Title 18, United States Code, Section 371); Count Two (securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff); Count Three (wire fraud, in violation of Title 18, United States Code, Section 1343); Counts Four through Count Seven (mail fraud, in violation of Title 18, United States Code, Section 1341); Count Eight through Ten (money laundering, in violation of Title 18, United States Code, Section 1957); or Counts Eleven through Fifteen (money laundering, in violation of Title 18, United States Code, Section 1956) of this Indictment, **[1] TERRY KRETZ, [2] ROBERT HALEY**, and **[3] DARYL BORNSTEIN** shall forfeit to the United States of America any and all property, real or personal, obtained directly or indirectly as a result of the scheme or artifice to defraud as alleged in each count, and which constitutes or is derived from proceeds traceable to each violation. The property to be forfeited includes but is not limited to a money judgment in an amount of at least $18 million, which represents proceeds of the offenses in Counts One through Fifteen described above.

3. Pursuant to Title 18, United States Code, Section 982(a)(2), upon conviction of the offense alleged in Count Sixteen (false statement on a loan application, in violation of Title 18, United States Code, Section 1014), **[1] TERRY KRETZ** shall forfeit to the United States of America, any and all property, real or personal, which constitutes or is derived from proceeds

**[1] TERRY KRETZ** obtained directly or indirectly as the result of such violation. The property to be forfeited includes but is not limited to a money judgment in an amount of at least $1.7 million, which represents proceeds of the offense in Count Sixteen described above.

4. If any of the property described above, as a result of any act or omission of **[1] TERRY KRETZ, [2] ROBERT HALEY**, or **[3] DARYL BORNSTEIN**

      a. cannot be located upon the exercise of due diligence;

      b. has been transferred or sold to, or deposited with, a third party;

      c. has been placed beyond the jurisdiction of the court;

      d. has been substantially diminished in value; or

      e. has been commingled with other property that cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property. The United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of **[1] TERRY KRETZ, [2] ROBERT HALEY**, or **[3] DARYL BORNSTEIN** up to the value of the property listed above as being subject to forfeiture.

A TRUE BILL

███████████████████████
FOREPERSON

_____
JERRY E. MARTIN
UNITED STATES ATTORNEY

_____
TY E. HOWARD
ASSISTANT UNITED STATES ATTORNEY

19